Next case is Concaten, Inc. v. AmeriTrak Fleet Solutions, LLC. Concaten, Inc. v. AmeriTrak Fleet Solutions, 2016-11-12 Mr. Hjort Thank you, Your Honor. Carl Hjort on behalf of Concaten with me as my co-counsel, Mr. Palladino. May it please the Court. The patents in suit are directed to eligible subject matter because they are directed to the inventive concept of collecting data that no one had previously thought to collect and use that data to produce instructions for plow operators. This result was previously unobtainable by the industry, and the evidence Concaten presented to the District Court demonstrated that the industry viewed Concaten's invention as a technological advance. The evidence put before the District Court shows that Concaten's invention is not the mere computerization of a previously known process. Furthermore, the U.S. PTO has issued additional patents to Concaten following the Alice decision, showing that the PTO still views the inventions disclosed in these patents as patent-eligible subject matter. And Concaten's patents do not preempt the field of data acquisition and analysis from snow plows because there are definite limitations in the claims that would allow a competitor to construct an equally efficient system without infringing Concaten's patents. You may continue. Okay. Concaten's patents solved two problems. One, we identified that data from snow plows would be useful in guiding operations of them. And two, we optimized snow plow allocation based on numerous variables that can change the effectiveness of plow operations. The industry was initially reluctant to adopt our system, and they viewed their previous practice, which just sent out plows with no guidance, to be sufficient. Well, are you debating the proposition that we're talking about a method for fleet logistics? And that it was unclear to me whether you're saying, well, that's not really what we're doing, that it's not really a fair characterization, or whether you're saying even if that's a fair characterization, this form of it was not longstanding. So, therefore, it can be somehow patentable or not. Yes, I think your second point is correct, that even if it is a method of fleet logistics management, it wasn't longstanding because no one before Concaten had ever collected data from snow plows. So to take this data in and use it to control the process going forward was not something that had ever been done before. It, in fact, couldn't have been done. But does it, I mean, I guess that's part of my point, is how specific do we have to be? In other words, if you're organizing human activity and you're using technology to improve how you organize that human activity, does it have to be that organization of human activity relating to snow plows was longstanding? Or can this type of organization of human activity for any kind of fleet logistics be the comparison? I believe it has to be limited to snow plows because the claims only discuss a snow plow embodiment. They require the data be taken from the snow plows. It's not just any old data. It's snow plow data. So since it is a limitation of the claims, I think that is necessary to define the idea as limited to snow plows. So this case, I think, is a lot like the diamond versus deer case, which is still recognized as good law in that it is a case where you take data and use it to control the process. That's exactly what deer did. Took temperature data from a mold and used it to control the process of curing rubber. We take data from the operation of snow plows and use it to control the future process of those plows so that they can effectively plow the roads. And that's still good law. I mean, the district court distinguished deer on the grounds that saying that we hadn't identified a problem that had previously been unsolved by the industry. But I think that we have demonstrated that. The district court did more than that, as I understand, as it relates to taking issue with your comparison. It wasn't the district court's point that even if this is a clever way to do something, and even if you get credit for being the first one to do it, that doesn't mean that there is a technological solution that you're proposing. This is actually a very complex technological solution, because a plow going down the road is not always in communication with its central server. So there's going to be a time when you're just out on the road with no communication, so that data has to be saved. But you didn't invent that. I mean, that's just a generic capability that existed before, right? Buffering is a generic use of data acquisition, saving it so that it can be communicated at a time when there's a connection. Yes, but again, no one had applied it in the snow plow field before. And I think the other thing the district court did was they disregarded the PTO's view on the patentability of these inventions. I mean, we have shown you in the briefs the comparison of the claim from the CIP versus the comparison of the model claim in this case. And there's not very much difference between those two. And now the PTO is still issuing those patents, even after Alice, even after all the examiners have been guided on that issue. And so I think that that is evidence that should have been considered by the district court in making this determination. But it doesn't find its way into the opinion at all. And then I do want to touch on the issue of this preemption, that we haven't preempted the field of snow plow data acquisition. Because there are certainly limitations in those claims that would allow someone to make a non-infringing system. For example, the claims require that both a map and a instruction be sent back to the truck. So if you didn't send a map, but you just sent an instruction, you wouldn't be infringing. You could generate the map on board, because you have the GPS data right there in your system on the truck. So if you generated your map on board and didn't derive it from the server, that would be another possible non-infringing system. And further, you could even generate a map and an instruction at the server, send it back to the truck, as long as you didn't send one of the enumerated instructions in the claim back. Counsel, it has occurred to me that if we all hadn't gone down this 101 route a number of years ago, so many of these claims would have been knocked down on a 103 basis. Because they're all pretty obvious. Snow plows communicating, and you've got a computer keeping track of the data. That's possibly true, Your Honor. I would note, though, however, that there are a lot of patents and prior art that are cited in those patents. And those patents have also been subjected to inter partes re-exam. So they've been vetted for a 103 question pretty thoroughly. But I take your point as well taken, that obviously other considerations of patentability could be in play. But those are questions of fact. And of course, we don't have any discovery in this case. This is just on the pleadings before any discovery has been taken. And of course, 103 is for us. Right. Going back to your argument with respect to the 836 CIP, there were a whole bunch of additional limitations in that claim that the PTO allowed. Were there not? The additions to that claim are that you would subject the data to data scrubbing, which is to take out obviously incorrect data from the feed and throw it away so that the data is clean. And then you would route it through multiple servers. But those additions I don't view as changing the eligibility of the claims. I think the eligibility is tied on this idea of collecting, ingesting the data from a snow plow and then deriving the instructions of the map, sending it back. All of those limitations. You can plow ahead or we'll save it for your rebuttal. I will save my time for rebuttal. Mr. Hanson. Thank you and good morning, your honors. May it please the court. I'm Loren Hanson here on behalf of the FLE Ameritrack Fleet Solutions. As the district court found, these five patents are drawn towards patent ineligible subject matter. The district court should be affirmed. This case is very similar to the vast majority of Section 101 cases that this court has been hearing since the Alice decision was issued by the Supreme Court. The court's decisions in Affinity Labs, vehicle intelligence case, TLI communications cases, and the content extraction cases are directly on point here. In each of those cases, this court affirmed a Rule 12 dismissal because the claims at issue were abstract ideas that offered no inventive concept. That is the same thing here. You're not disputing that they were the first to come up with this idea, right? Well, I don't think that's an issue to wrestle with here and that's really going to be a fact question if this case gets remanded and we start discussing 102 and 103 issues. I think the important point there is that the novelty of any element or steps in a process has no relevance in determining whether there's subject matter eligibility. And that's the ultra-mercial decision and this Friday decision from Intellectual Ventures v. Symantec. So when we're talking about issues of novelty or obviousness, those do involve some questions of fact, but those aren't at issue in a 101 analysis. The Supreme Court in Alice has directed us to look at subject matter eligibility at an early stage and we can do it here on the pleadings. To briefly address Learning Council's argument on preemption that somehow limiting this to a snowplow makes it patent eligible, I disagree. The court has been clear in Alice and in the Internet's patent case that limiting the use of an abstract idea to a particular technological environment is not enough. In the Intellectual Ventures case decided on Friday, a narrow claim directed to an abstract idea does not demonstrate patent eligibility. So simply taking a generic computer and doing some method, an abstract idea with a generic computer, is not enough even if you restrict it to the technological environment of snowplows. And I think those cases hold that. Respectfully, Your Honor, I think the District Court's opinion was well reasoned. It's correct. It's in line with the vast majority of Section 101 cases and there is nothing that I see as particularly interesting in this case. Unless Your Honors have any further question, I will cede my time. Thank you. And Mr. Hanson, Mr. Buech has some rebuttal time if he needs it. I'll just speak briefly. I think the issue of the first to invent this idea is very important to the eligibility because that's the actual invention is to realize that this data was useful and to where no one else had realized that that data was useful before. And then to take it and use it to control the process is the invention. So I really do think that is an important question. I mean, it's a question of fact, certainly. And on remand, we can certainly deal with that. But I do think that that is an important issue that we should, the court should consider. That's all I have. Thank you, counsel. Take the case under advisement. All rise.